Neff, J.
The ease of E. W. Gebhardt v. Herman Ibele is an action brought by the plaintiff to recover a balance of $1,022.50 claimed to be due to the plaintiff on a certain contract for the doing of the carpenter work for the erection of a terrace for the defendant. The action also seeks foreclosure of a mechanic’s-lien, and the proce*eds of the foreclosure to be applied to the payment of the balance claimed to be due.
In addition to this, it is sought by the plaintiff to have the court reform the contract, so as to eliminate from the plaintiff’s contract certain matters contained in the specifications, which are referred to as allowances to the owner.
The contract between the parties is in writing, and provides that, in consideration of the payment of $4,070, the plaintiff *34 shall'do and perform certain work and furnish materials according to plans and specifications theretofore drawn. The specifications, under the title of “Trimmings: (Hardware)” contain this provision:
“The carpenter, contractor to allow the owner the following allowance for the selection of the items mentioned:
“No. 1. Allow $200 for mantels.
“No. 2. Allow $190 for gas and electric fixtures.
“No. 3. Allow $110 for finish hardware.
“No. 4. Allow $475 for furnaces.
“No. 5. Allow $190 for decorating.”
The clause of'the contract as to which reformation is sought is as follows:
“The carpenter’s contract to include all lumber and finish, also labor and rough hardware, and doors, windows, weights and pulleys. The owner to furnish finish hardware and the carpenter-to put same on.
“The outside walls are not to be furred as specified.
‘ ‘ Sidewalks and gravel or slate roofing is not included in this contract.”
The amended petition has been mislaid; at all events I am not able to find it among the files; but as near as I am able to remember the exact language, it is to this effect, in respect to the reformation of the contract, that the contract be so reformed as to eliminate from the obligation of the contractor any obligation to do and .perform the several matters referred to in the- specifications as allowances; the practical difference being this: the plaintiff contends that he is to be entitled, having performed his contract, to the full amount named in the contract, to-wit, $4,-070; the owner’s contention being, that from that should be allowed approximately $1,050, and that therefore there is nothing due to the plaintiff, he having been paid in full. If the allowances are not included in the contract, and if the owner is not entitled to these allowances, then there would be a balance , of somewhat more than a thousand dollars.
As. I understand the defendant, there is no substantial contention but that the mechanic’s lien conforms, in its execution, time of its execution, and filing, to the statute. There is no infirmity; • *35 perhaps, in that that would invalidate it. As I understand, there is practically no contention between the. parties along this line; and if there is, the understanding was that the issue of reformation should be tried out first, and then if there were further matters to be determined, they shduld be reserved for future consideration.
The doctrine in equity is, that where there is a mutual mistake of fact between the parties to a written obligation, and -if, because of such mutual mistake, the contract fails to express the • exact intention of the parties, a court of equity may reform the contract so as to make it express the intention of the parties to the contract.
The contention of the plaintiff, briefly stated, in this respect, is this: that it was the intent and purpose of the scrivener of the contract, when he wrote it, and the purpose of the parties when they executed it, that it should exclude from its operation matters referred to in the specifications as allowances. On the other hand, the .contention of the defendant is, that it was expressly understood that these allowances were to be made to the owner, and that the contract of plaintiff did include allowances, and that there is no balance due.
Briefly stated, this may be said to be the contention of the parties.
The first subject-matter of interest is, whether this is such a mistake as would be competent for a court of equity to reform or correct'by reformation of the contract.
I think that the ease cited in the 11 Ohio, on page 480, the case of Lewis Evans v. the Administrator and Heirs at Law of James Strode, is exactly in point in the decision of this question. The syllabus is as follows (I shall read only that, which is perfectly clear):
“Where an instrument, by a mistake of the parties as to the legal effect of the terms used, fails to carry out their intention, relief m^y be afforded in equity.
“A mistake in law may be corrected in equity.”
So that I think the subject-matter is such that, if the facts would warrant such a course, the court might properly reform the instrument.
*36 The next subject, so far as the law in the case is concerned, that is of interest, is as to the weight of the evidence as to the necessary quantum of proof to warrant the court in thus reforming the contract, and upon this subject the Supreme Court, in 27 O. S., page 84, in the case of David H. Potter v. Ellen S. Potter, Executrix of Cassander E. Potter, Deceased, has stated the law, the syllabus reading as follows:
“Clear and convincing proof is required to warrant the reformation of a written instrument on the ground of mistake; and when it clearly appears that this rule has been disregarded in reforming the instrument, and the finding of the court can be sustained only on the supposition that it regarded the law as requiring .nothing more than a mere preponderance of evidence to warrant a finding sustaining the alleged mistake, a reviewing court, on error, may reverse the judgment based on such finding.”
In the opinion, on page 85, Day, J., says:
“When the reformation of a written instrument is sought on the ground of mistake, the presumption is so strongly in favor of the instrument, that the alleged mistake must be clearly made out by proofs entirely satisfactory, and nothing short of a clear and convincing state of facts, showing the mistake, will warrant the court to interfere with and reform’ the instrument. This principle rests upon the soundest reason and upon undisputed authority, and if not adhered to by the courts, or, when plainly disregarded, is not enforced by reviewing courts, the security and safety reposed in deliberately written instruments will be frittered away, and they will be left to all the uncertainty incident to the imperfect and slippery memory of witnesses.”
This is no doubt the law in Ohio, and evidently in other jurisdictions. This is a doctrine that arises out of the very necessities of the case. Where parties have gone through the solemnity of recording their agreement, putting it into writing, it would be unwise, exceedingly unwise, for courts of equity to interfere and declare them as .otherwise than what they have expressly stated, unless the proof is clear enough to be convincing and satisfactory. But if it is satisfactory, and convincingly shows that the language employed by the parties to the written agreement does not express the intent of the parties making the contract, a court of equity may be warranted in intervening by reformation; and *37 this results from the very nature of the ease, because, at most, while a good deal of solemnity attaches to the fact that the parties put their sign manuals to a certain paper, while we think a good deal of importance attaches to that act, yet, after all, in the last analysis, the writing itself is only the written evidence of the intention of the parties.
A contract means the meeting of the minds, the coming together of the minds, a proposition on one side and an acceptance by the opposite side in the precise terms in which it was made by the other; and it is this agreement of the minds, the coming together of the minds of the parties, that fixes the rights of the parties; and the written instrument is at most and at best merely evidence,- although the best evidence, of what the contract was.
But whatever the reasons inducing courts of equity to intervene in such matters are, the law is fully settled in Ohio; so that it only remains for the court to determine as to the question of evidence, whether or not it is established by full, clear, convincing and satisfactory evidence that the language of the contract does not express the intention of the parties to the instrument.
This contract was written out by one of the architects: The parties met one evening, and at the very first blush of this situation we are confronted by a serious disagreement as to what the facts were.
The plaintiff, and Warner and Bolmeyer, the two architects, say that the specifications were not there. The evidence shows that, some time prior to that a copy of the specifications had been put into the hands of the plaintiff, and that he had examined them; that some conversation was had with him and by him about the specifications; but the defendant says that the specifications were lying upon a little table right near.
Now, the plaintiff and the two architects say that, while the contract was under consideration, the question of allowances as provided for by the specifications came up, and a talk was had about it, and that, as a result of that talk, the language which I have already read, the first clause if not more, was inserted into the contract, and that it was expressly understood and assented *38 to by all the parties that the language was sufficient to exclude from the contract the allowances referred to in the specifications.
The contract is very i'nartistically drawn, containing very little detail, so little in fact that at first blush a person reading it would infer that Gebhardt was to build the entire terrace and furnish all materials and all the labor. And the language inserted in the contract is peculiar, as follows: “The carpenter contract to include all lumber and finish, also labor and rough hardware and doors, windows, weights and pulleys. The owner to furnish finish hardware and the carpenter to put same on.” Observe there is no reference made to allowances here. They say it was included. There is a suggestion in the very language itself that the matter was under consideration as to what this contract' did include. The two architects and plaintiff say that the specific purpose of inserting this language was to make it definite and certain as to what was included, and to éxclude the matter of allowances, and the other party denies it. And so the issue is made. As a matter of fact, what was the intention of the parties? Was it the intention of the parties, in inserting said language, to exclude the allowances as set but in the specifications, or not ?
There are three witnesses, two or whom are apparently disinterested, and one of them is remotely related to the plaintiff, and that relationship might possibly suggest some infirmity in his testimony.
If the case depended upon a preponderance of the evidence, I should have no hestitation at all in saying that it is apparent from the proof that it was the intention of the parties that the allowances were not to be included in plaintiff’s contract. But the question presented is this: Is the evidence clear, convincing and satisfactory?
There .are other facts or items of evidence, however, to which appeal may be made in determining this question, and I will call attention to some such matters. They are relevant, even though they do not bear directly upon the question in issue to be definitely determined.
William Hugh testified that at a certain time of payment there would be $400 due that day, which made an aggregate of $1,900 *39 to apply on the contract. At the time that payment was made the defendant said that the work was about half done. Now, $1,900 would be a little less than half of $4,000. The inference from this statement would be that, according to defendant’s conception of the situation, he regardéd the allowances as not included in the contract, and the total amount to be received on it would be $4,000 instead of $3,000, because such a statement would not naturally be in accord with the situation where the plaintiff was to receive only $3,000. This evidence is of value, and besides it is contradictory to Mr. Ibele’s testimony. Mr. Ibele denies having said that. That evidence, therefore, has both a positive and a negative value — positive as tending to establish plaintiff’s- contention, and negative as tending to weaken the credibility of Mr. Ibele.
George F. Schaefer says he was present at the time both the parties assented to excluding the allowances.
Rose Gebhardt, wife of the plaintiff, says that she was present when defendant stated that the allowances were not to be included. It was suggested by counsel for defendant that the very emphasis with which the wife of plaintiff insisted that this remark was repeated, with a very tiresome reiteration, tends to weaken her testimony. I think there is something in that suggestion; it is indicative, at least, of quite a great deal of zeal on her part.
Mary Ibele, wife of defendant, testifies that the situation was such as would make it very improbable that Mrs. Gebhardt could have heard such a conversation, and tends to discredit her statement.
There is another circumstance to which I think appeal may be had in determining this issue of fact — counsel for defendant does not quite agree with the court, and I don’t know but that counsel for plaintiff was disposed at one time to dissent from the opinion of the court, and that was this: Here it is contended by one party that the work, labor and materials on this contract were to be rendered, performed and furnished for $3,000; .the other side said “No, for $4,000.” Now, it seems to me — and I started the inquiry as to what was the actual cost of these materials and the actual cost of that labor at that time, the labor *40 provided for and the materials provided for in the contract, the actual cost put in the apartment on the basis of the market values at that time; and so I started the inquiry by asking the plaintiff whether he had any account of the actual cost to him of labor and materials furnished and used in the completion of this work. He then produced a book in which entries were made showing, or tending to show, that the work actually cost him, in labor and materials, $3,725. After the court had thus initiated this inquiry, both sides called in witnesses. After a good deal of reflection on this subject, I am still inclined to think that the court may appeal to such an extraneous fact as that in a ease of doubt.
George Colemeyer, an architect, swears that the work would 'cost at that time at least $3,700 for labor and materials.
James Cameron, who was called by the plaintiff, swears it would cost $3,150 without profit to contractor, but if profit were added, it would be $3,430.
Charles Tousley, also called by the plaintiff, swears he had figured upon a single suite, and upon his estimate of the cost of one suite, he figured that $3,772 would be his estimate.
Henry G. Slatmyer estimates the cost of the work at that time, upon the basis of everything being first class, at $4,642.
IT. A. Hansen figured it at $4,071.
After adding all these different estimates of carpenters, we find that they average $3,934.
. It seems to me that that fact might lend aid to the court in deciding what the fact was, whether this man was contracting to do this job for $3,000 or $4,000. The fact that the work could not possibly be do,ne for the $3,000 might be a circumstance bearing upon the question as to whether he really undertook to do the work for that sum of money.
Now, this is the situation before us, substantially. And so, after this somewhat hurried and meager review- of the testimony, the question recurs — and it is a question that must be decided— is it established by clear, satisfactory and convincing proof that the intention -of the parties to this contract was to exclude from its operation of the contract the allowances named in the specifications ?
*41 I am inclined to think that the evidence is so clear, satisfactory and convincing that the court is called upon to reform the contract in that respect. Plaintiff may therefore take a decree.